FILED
IN CLERK'S OFFICE
U S DISTRICT COURT E.D.N.Y.
★ JUN 2 0 2011 ★
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
NOEL SANTANA,

                Petitioner,

        -against-

UNITED STATES OF AMERICA,

                Respondent.
------------------------------------------------------------X

**MEMORANDUM & ORDER**

**08-CV-4476 (NGG)**

NICHOLAS G. GARAUFIS, United States District Judge.

Petitioner pro se Noel Santana ("Santana") seeks to vacate his sentence pursuant to 28 U.S.C. § 2255 based on the alleged ineffectiveness of his trial counsel. (See Pet. (Docket Entry # 1).) For the following reasons, Santana's Petition is denied.

## I. BACKGROUND

### A. Santana's Prior State Sentence

In March 2002, the New York Supreme Court, Queens County, sentenced Santana to determinate, concurrent terms of imprisonment, totaling three and a half years, on charges of second degree burglary, attempted first degree robbery, and third degree criminal mischief. (See State Sentencing Tr. (Docket Entry # 1-3 at 7-9) at 3; State Sentencing Order (Docket Entry # 1-3 at 10.) Under New York Penal Law ("P.L.") § 70.02(b), the burglary and robbery charges constituted "violent felonies," and, under P.L. § 70.00(6), convictions on such charges required the imposition of a term of post-release supervision ("PRS"). The state sentencing court did not impose a term of PRS on Santana. (See State Sentencing Tr.; State Sentencing Order.)

1

Nevertheless, Santana was subject to PRS upon his release from state incarceration. (See Pet. at 5; Santana Aff. (Docket Entry # 1-2) ¶ 3; Santana Mem. (Docket Entry # 1-3) at 1.)[1]

In People v. Sparber, 10 N.Y.3d 457 (2008), the New York Court of Appeals held that sentencing courts must themselves pronounce terms of PRS, even where such terms are automatically required. Id. at 469-71. In the absence of such a pronouncement, resentencing is required. Id. at 471-73.[2] In response to Sparber, the New York Legislature passed P.L. § 70.85. See People v. Boyd, 12 N.Y.3d 390, 393-94 (2009). This statute applies to cases like Santana's, "in which a determinate sentence was imposed . . . , and was required by law to include a term of post-release supervision, but the court did not explicitly state such a term when pronouncing sentence." P.L. § 70.85. Correction Law § 601-d, passed at the same time as P.L. § 70.85, requires courts to consider re-sentencing defendants in Santana's position. Under P.L. § 70.85, courts, when considering re-sentencing pursuant to Correction Law § 601-d, may, "on consent of the district attorney, re-impose the originally imposed determinate sentence of imprisonment without any term of post-release supervision."

Accordingly, on October 14, 2008, the New York Supreme Court, Queens County, re-sentenced Santana to the original determinative sentence, "without any term of post-release supervision." (Pet. at 5; Santana Mem. at 2; Resentencing Order (Docket Entry # 1-3 at 12-13).)

---

[1] See Mark Bonacquist, Commentary to New York Correction Law § 601-d (2008) ("Apparently under the mistaken belief that a period of PRS arose as a matter of law, judges in many cases failed to include a period of PRS in the defendant's commitment order. In such cases, the Department of Correctional Services calculated the period of PRS pursuant to the terms of the Penal Law and administratively added it to the inmate's sentence.").

[2] In a companion case, Garner v. N.Y. State Dep't of Corr. Servs., 10 N.Y.3d 390 (2008), the Court held that the New York Department of Correctional Services could not administratively impose a term of PRS without the requisite order from the sentencing court. Id. at 362-63.

2

### B. Santana's Federal Sentence

On July 31, 2007, pursuant to a plea agreement, Santana pleaded guilty in front of this court to possessing a firearm, having previously been convicted of a felony, in violation of 18 U.S.C. § 922(g)(1). (See Resp. Mem. (Docket Entry # 6) Ex. A (transcript of plea proceedings) ("Plea Tr.").) On February 12, 2008, the court sentenced Santana to thirty-nine months of imprisonment and three years of supervised release. (Id. Ex. C (transcript of sentencing) ("Sent. Tr.") at 21.) At the time of sentencing, Santana was still serving his term of state PRS. (Pet. at 5; Santana Aff. ¶ 3; Santana Mem. at 1.)

Santana contends that he repeatedly told his trial counsel that the state sentencing court had not itself pronounced the PRS portion of his sentence, rendering it unlawful. (Pet. at 5; Santana Aff. ¶ 3; Santana Mem. at 1-3.) Nevertheless, Santana claims, his trial counsel never conducted any investigation as to the validity of the state PRS term. (Pet. at 5; Santana Aff. ¶ 3; Santana Mem. at 1-3.) In Santana's pre-sentence report, the Government recommended, pursuant to United States Sentencing Guideline § 4A1.1(d), that his criminal history level be increased by two points as a result of his having committed the federal weapons possession while serving the state PRS sentence. (Santana Mem. at 1, 3, 5, 11.) As a result of trial counsel's lack of investigation into the validity of Santana's PRS status, Santana contends, the pre-sentence report went uncorrected. (Id. at 2.)

Santana claims, incorrectly, that the addition of "2 points in the criminal history"—as recommended in the pre-sentence report—"was part of the sentencing evaluation." (Id. at 5.) In fact, the reverse is true. The parties agreed that Santana's total offense level was twenty-one. (Sent. Tr. at 4.) Defense counsel also agreed that the Government's recommendation that Santana's criminal history category be set at four—based in part on the two extra points

3

stemming from his PRS status—was "technically correct," but argued that it overstated the seriousness of Santana's underlying state offense. (Id. at 4-7.) The court agreed and found that Santana should be assigned a criminal history of three, instead of four. (Id. at 7-8.) In so finding, the court stated:

> I'm going to make the change because I think [defense counsel's] argument has certain strengths that a criminal history category of three is a significant criminal history category without question, and the nature of the offenses which lead to the criminal history category of four *are basically the result of the violation of his [PRS]* .... Which is no small matter either, but I think in the totality a criminal history category three appropriately reflects his criminal behavior in the past. . . . [T]he presentence report will be revised to reflect a criminal history category of three.

(Id. (emphasis added).) Thus, contrary to Santana's contention, the court did not add two points to Santana's criminal history score based on his state PRS status.

Having determined that Santana's criminal history category should be set at three, and agreeing that his total offense level should be twenty-one, the court determined that Santana's sentencing range was forty-six to fifty-seven months. (Id. at 8.) The court further determined that a sentence within this range was appropriate (id. at 8, 21), but subtracted seven months from the low end of the range—for a total of thirty-nine months—because Santana potentially faced seven additional months of state incarceration for having violated the terms of his state PRS by committing the federal crime (id. at 12-22).[3]

In sum, the record demonstrates that Santana's state PRS status did not increase his federal sentence.

---

[3] Thus, Santana's state PRS status at the time of his federal sentencing may have served to *decrease* the total amount of time Santana spent incarcerated. This is so to the extent that the state courts, having not imposed any term of PRS upon re-sentencing Santana, also determined that Santana would not have to serve any additional time for violating the terms of the originally imposed PRS term. Whether or not this occurred is not apparent from the record.

4

C.  **Waiver of Appeal or Collateral Attack**

In his plea agreement, Santana agreed to waive any appeal or other post-conviction challenge to any sentence of sixty-three months or less. (Resp. Mem. at 2; Plea Tr. at 17; Sent. Tr. at 22.) At the plea proceeding, Santana stated that he had read and understood the plea agreement (Plea Tr. at 12), that trial counsel had answered all his questions about it (id.), and that he understood the waiver provision (id. at 17). Santana stated, at both the plea proceeding and sentencing, that he was satisfied with the assistance his trial counsel had provided. (Id. at 7; Sent. Tr. at 2.) He also stated that he was pleading guilty voluntarily and of his own free will. (Plea Tr. at 18.) Accordingly, the court found that Santana was "acting voluntarily" and that he understood "the charge, [his] rights, and the consequence of [his] plea." (Id. at 21.)

II.  **DISCUSSION**

A.  **Applicable Standard**

Under 28 U.S.C. § 2255, a court may "vacate, set aside or correct" a conviction or sentence "imposed in violation of the Constitution or laws of the United States." However, "[i]f it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion." Rules Governing § 2255 Proceedings for the United States District Courts, Rule 4(b). In § 2255 proceedings, the petitioner bears the burden of proof by a preponderance of the evidence. See Triana v. United States, 205 F.3d 36, 40 (2d Cir. 2000).

B.  **Waiver**

The record shows that Santana knowingly and voluntarily entered into an agreement not to challenge any sentence of sixty-three months or less. This waiver is enforceable, and, as the Government correctly argues (see Resp. Mem. at 4-5), bars relief. See United States v. Monzon,

5

359 F.3d 110, 116 (2d Cir. 2004) ("Where the record clearly demonstrates that the defendant's waiver of her right to appeal a sentence within an agreed Guidelines range was knowing and voluntary, that waiver is enforceable.").

The Second Circuit has noted that such a waiver is "not enforceable where the defendant claims that the plea agreement was entered into without effective assistance of counsel." United States v. Hernandez, 242 F.3d 110, 113-14 (2d Cir. 2001). However, a waiver of the right to challenge a sentence does not "become[] unenforceable simply because a defendant 'claims' ineffective assistance of counsel." Monzon, 359 F.3d at 118. Instead, a petitioner must show that the "waiver was *the result* of ineffective assistance of counsel." Id. at 119 (emphasis added). In other words, a petitioner must show that trial counsel was ineffective in advising him to plead guilty, because counsel misled the petitioner either as to his bargaining position, see Parisi v. United States, 529 F.3d 134, 139 (2d Cir. 2008), or as to the consequences of accepting the plea, see Monzon, 359 F.3d at 118. See also United States v. Cano, 494 F. Supp. 2d 243, 248 (S.D.N.Y. 2007) ("Claims of ineffective assistance of counsel can survive § 2255 waivers, but only when the claim relates to the negotiation and entry of a plea or sentencing agreement.").

Santana does not allege that his trial counsel was ineffective in advising him to enter into the plea agreement or the waiver provision therein. Instead, he alleges that trial counsel was ineffective for not investigating and presenting a specific argument for a lower sentence. Such a claim is barred by the waiver. In United States v. Djelevic, 161 F.3d 104 (2d Cir. 1998), the Second Circuit "emphatically reject[ed]" petitioner's claim that his waiver of his right to challenge his sentence "should not bar consideration [of his claim] because counsel was ineffective not at the time of the plea, but at sentencing." Id. at 107. The court found that petitioner's ineffectiveness claim was "in reality" a challenge to "the correctness of his sentence

6

under the Sentencing Guidelines," and was "therefore barred by the plain language of the waiver contained in his plea agreement with the government." Id. The same reasoning applies here. By claiming that trial counsel was ineffective for failing to present certain arguments at and before sentencing—but after the negotiation of the plea agreement—Santana effectively claims that his sentencing calculation was erroneous. This is precisely the kind of challenge Santana waived the right to make. See Odiana v. United States, 499 F. Supp. 2d 196, 199-200 (N.D.N.Y. 2007) (refusing to void waiver where petitioner was "not alleging his counsel was ineffective in reaching the plea agreement or in including a waiver in the plea agreement," but was instead alleging that counsel failed to make "certain arguments that might have mitigated his sentence").

To the extent that Santana does indeed claim that trial counsel's failure to investigate his PRS status rendered counsel ineffective in negotiating the plea, such a claim must fail. This is because the parties, at the time that they negotiated the plea agreement, assumed—correctly, as it turned out—that Santana would be assigned a criminal history category of three. (Resp. Mem. at 2 n.1; Plea Tr. at 16.) That is, the parties did not anticipate that Santana's criminal history level would be increased to four based on Santana's PRS status, as the Probation Department later recommended. Because Santana's PRS status apparently did not affect the parties' assumptions in negotiating the plea agreement, trial counsel's failure to investigate that PRS status could not have rendered him ineffective in conducting such negotiations.

Since Santana waived his right to challenge any sentence of sixty-three months or under, and since this waiver is enforceable, his Petition is denied.

### C. Merits of Santana's Ineffectiveness Claim

The court also rejects Santana's claim on the merits. In order to prevail on a claim of ineffective assistance of counsel, a defendant must establish both (1) that "counsel's

7

representation fell below an objective standard of reasonableness . . . under prevailing professional norms," Strickland v. Washington, 466 U.S. 668, 688 (1984), and (2) that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," id. at 694.

The court need not decide whether trial counsel's performance fell below "prevailing professional norms" because it is clear that, even had counsel successfully argued that Santana's PRS status was unlawful, the result at Santana's sentencing proceeding would not have been different. As detailed above, the court explicitly declined to enhance Santana's sentence based on his PRS status, when it assigned him a criminal history category of three, rather than four.

In addition to incorrectly claiming that his PRS status affected the court's Guidelines range calculation, Santana appears to argue that the court might have imposed a below-Guidelines sentence had it understood that Santana's PRS status was unlawful. (See, e.g., Santana Mem. at 5 (arguing that court would have imposed a lower sentence had it known that Santana had "suffered through 3½ years of restricted liberty based on a mistake").) The court rejects such a claim. The error in the imposition of Santana's state PRS status was a procedural one unrelated to Santana's culpability. As discussed above, under P.L. § 70.00(6), Santana, having received a determinate sentence for a violent felony, was required to be sentenced to a term of PRS. The problem in Santana's case was that the state sentencing court failed to pronounce such a sentence—instead, it was apparently imposed administratively. Such circumstances would not have triggered any of the factors listed in 18 U.S.C. § 3553(a) and would not otherwise have justified a below-Guidelines sentence.

Since Santana has not shown that his trial counsel's failure to challenge his state PRS status did anything to increase his federal sentence, he fails to meet Strickland's prejudice prong. His ineffectiveness claim is therefore denied.

## III. CONCLUSION

For the foregoing reasons, Santana's Petition is DENIED. Because Petitioner has not made a substantial showing of a denial of a constitutional right, a certificate of appealability will not issue. See 28 U.S.C. § 2253(c)(2). The court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith and therefore in forma pauperis status is denied for purpose of any appeal. See Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

Dated: Brooklyn, New York
June 9, 2011

s/Nicholas G. Garaufis
NICHOLAS G. GARAUFIS
United States District Judge